IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AMADOU BA, | ) | CASE NO. 3:26-CV-01374-JJH |
| Plaintiff, | ) | |
| vs. | ) | JUDGE JEFFREY J. HELMICK<br>UNITED STATES DISTRICT JUDGE |
| WARDEN, CORRECTIONS CENTER OF NORTHWEST OHIO, *et al.*, | ) | MAGISTRATE JUDGE<br>JONATHAN D. GREENBERG |
| Defendants. | ) | **REPORT & RECOMMENDATION** |

This matter is before the undersigned pursuant to Local Rule 72.2. Before the Court is the Petition of Amadou Ba ("Ba" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2241 (Doc. No. 1) and the Return of Writ/Response in Opposition to Petition and Motion to Dismiss (Doc. No. 8). Petitioner is being held in the custody of the Detroit Field Office of U.S. Immigration and Customs Enforcement ("ICE") at the Corrections Center of Northwest Ohio. (Doc. No. 1 at 2.)

For the following reasons, the undersigned recommends that the Court find that Ba's detention is unlawful, GRANT the Petition, and RELEASE Ba from pre-removal detention.

## I. Factual Background[1]

On or about August 5, 2023, Petitioner, a citizen of Mauritania, entered the United States through Mexico near Lukeville, Arizona. (Doc. No. 1 at 3-4; Doc. No. 8-2, PageID# 72.)

[1] "[D]ocuments attached to the pleadings become part of the pleadings and may be considered" by the Court on a motion to dismiss. *Alexander v. N. Bureau of Prisons*, 419 F. App'x 544, 545-46 (6th Cir. 2011) (quoting *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007)).

On August 6, 2023, the Department of Homeland Security ("DHS") determined Ba was inadmissible "pursuant to section 235(b)(1) of the Immigration and Nationality Act (Act), (8 U.S.C. 1225(b)(1))," and placed him in Expedited Removal ("ER") proceedings. (Doc. No. 8-2.)

On September 7, 2023, DHS placed Ba in regular removal proceedings and issued a Notice to Appear ("NTA"), informing Ba that he was required to appear before an immigration judge on April 24, 2025, at 1:00 p.m., to show why he should not be removed from the United States based on the charges set forth in the NTA. (Doc. No. 8-3.) DHS released Ba on his own recognizance. (Doc. No. 8 at 3.)

On November 20, 2023, Ba filed a Form I-589, Application for Asylum, setting forth his fear of returning to Mauritania. (Doc. No. 1 at 4; Doc. No. 1-2, PageID# 21-32.) Ba based his asylum claim "on his membership in the Black Fulani ethnic group and his activism with OLAN, an organization fighting for the recognition of minority languages in Mauritania." (Doc. No. 1 at 4.) Ba represented that he had been arrested in July 2022 during an OLAN protest and spent a week in jail, where he "endured physical abuse and disrespect that made [him] feel dehumanized." (Doc. No. 1 at 4; Doc. No. 1-2, PageID# 25.) He was arrested again in July 2023, this time at an OLAN meeting, was subject to threats and "called a 'slave,'" and was "beaten so severely that he lost consciousness." (Doc. No. 1 at 4.) This beating left him with a permanent scar on his head. (*Id.*) Ba alleged that by protesting discriminatory government policies, he was exposed to "torture, mass deportation[,] or death." (Doc. No. 1-2, PageID# 25.)

On June 5, 2025, Ba appeared as ordered for his MASTER hearing before an immigration judge. (Doc. No. 8-6, PageID# 92.) DHS moved to dismiss Ba's regular removal proceedings, under 8 C.F.R. § 1239(b) and § 239.2(a)(7), to which Ba objected. (Doc. No. 8-4, PageID# 79.) The immigration judge granted the motion to dismiss over Ba's objection. (*Id.*) As Ba no longer had an asylum case pending, DHS arrested Ba after he left the courtroom. (Doc. No. 8-6, PageID# 93.) Once again, DHS issued a Notice and Order of Expedited Removal, placing Ba back into ER proceedings. (Doc. No. 8-5.)

On June 29, 2025, Ba, through counsel, filed an "Emergency Motion to Reopen and Rescind [the] June 5, 2025, Order of Dismissal Without Prejudice and Motion for Stay of Removal." (Doc. No. 8-6.) Ba represented that since "being paroled into the U.S. on or about September 7, 2023," he had lived in Cincinnati, Ohio and worked in Burlington, Kentucky. (*Id.* at PageID# 93.) He had no criminal record. (*Id.*)

On July 6, 2025, Ba filed an appeal with the Board of Immigration Appeals ("BIA") challenging the June 5, 2025 decision. (Doc. No. 8-7.)

On July 14, 2025, the immigration judge denied Ba's emergency motion to reopen because Ba had filed an appeal with the BIA, which deprived the immigration judge of jurisdiction over the matter. (Doc. No. 8-8.)

On July 24, 2025, an immigration judge issued an order noting that Ba had requested a custody redetermination but that Ba had withdrawn the request. (Doc. No. 8-13.)

On September 23, 2025, a Supervisory Asylum Officer found Ba "demonstrated a credible fear of persecution or torture." (Doc. No. 8-1.) The Supervisory Asylum Officer issued an NTA, which placed Ba back into regular removal proceedings, and ordered him to appear before an immigration judge on October 27, 2025.[2] (*Id.*; Doc. No. 8 at 3-4.)

On October 9, 2025, an immigration judge found Ba ineligible for bond. (*See* Doc. No. 8-14, PageID# 116.) Ba appealed the October 9, 2025 order (Doc. No. 8-14), which as far as the Court can tell remains pending.

On November 17, 2025, Ba filed a third request for bond. (Doc. No. 8-15.) The immigration judge conducted a bond determination hearing on November 25, 2025. (*Id.* at PageID# 120.) The immigration

[2] Respondents state that, "[o]n November 13, 2025, although filed back in 2023, Petitioner's I-589 was uploaded under the then pending NTA proceedings." (Doc. No. 8 at 4.)

judge denied the request for bond on the following grounds: (1) Ba "was ineligible for bond as an applicant for admission;" (2) "there was no change of circumstances between the denial of the Respondent's initial bond request and the subsequent request before [the] [c]ourt;" and (3) Ba "was ineligible for bond because he had been in credible fear proceedings." (*Id.*)

Ba appealed the November 25, 2025 denial of bond to the BIA, which remains pending. (Doc. No. 8 at 4-5; Doc. No. 8-16.)

DHS filed a motion to pretermit the I-589 Asylum Application under the Asylum Cooperative Agreement ("ACA"). (*See* Doc. No. 8-9.) On January 27, 2026, the immigration judge granted the motion in part and set the matter for a special master hearing to determine the applicability of the ACA. (*Id.*)

On March 6, 2026, after a hearing, the immigration judge issued a summary decision denying Ba's I-589 application and ordering his removal to a third country, Uganda. (Doc. No. 8-10.)

On March 30, 2026, Ba appealed the March 6, 2026 removal order to the BIA. (Doc. No. 8 at 4; Doc. No. 8-11.)

On June 12, 2026, the BIA issued a briefing schedule for this appeal, and briefs were due on July 6, 2026. (Doc. No. 8-12.) This appeal remains pending as of October 22, 2026.

## II. Federal Habeas Petition

On June 16, 2026, Ba filed his federal habeas petition. (Doc. No. 1.)

That same day, Ba filed an Ex Parte Motion (Application) for Temporary Restraining Order. (Doc. No. 2.)

On June 17, 2026, the Court denied the Ex Parte Motion (Application) for Temporary Restraining Order. (Doc. No. 3.)

On June 24, 2026, the Court issued an expedited briefing schedule. (Doc. No. 7.)

On July 24, 2026, Respondents[3] filed a Return of Writ/Response in Opposition to Petition and Motion to Dismiss. (Doc. No. 6.)

On August 14, 2026, Ba filed his Traverse. (Doc. No. 9.)

That same day, Ba filed a Brief in Support of Immediate Release. (Doc. No. 10.)

On August 19, 2026, Respondents filed a reply to the Traverse. (Doc. No. 11.)

## II. Law and Analysis

### A. Subject Matter Jurisdiction

Respondents argue that "to the extent the Petition challenges the DHS policy choice to expand expedited removal, this Court lacks jurisdiction to adjudicate that claim." (Doc. No. 8 at 8.) However, the Court does not read Ba's Petition as challenging the expansion of expedited removal. Rather, the Court construes Ba's Petition as challenging the determination that he is subject to mandatory detention under § 1225(b)(1) based on the facts of his case.

Respondents also argue that "if the Petition challenges the IJ's discretionary decisions denying bond as unconstitutional, this court also lacks jurisdiction," citing 8 U.S.C. § 1252(e)(2). (*Id.*) This Court recently rejected similar arguments raised in a factually analogous case as follows:

---

[3] The Return of Writ/Response in Opposition to Petition and Motion to Dismiss was "filed on behalf of the federal respondents: Kevin Raycraft, Acting Director of the Detroit Field Office of U.S. Immigration and Customs Enforcement ("ICE"), David Venturella, Acting Director of ICE, Markwayne Mullin, Secretary of the U.S. Department of Homeland Security ("DHS"), and Todd Blanche, Acting U.S. Attorney General." (Doc. No. 8 at 2 n.1.) Respondents assert that "[t]he Office of the U.S. Attorney may appear in court to attend to the United States' interests, pursuant to 28 U.S.C. § 517, therefore, this filing attends to those interests to the extent the Petition names "______, WARDEN, Corrections Center of Northwest Ohio," as a respondent." (*Id.*) The Court notes that the Petition also names "___, FIELD OFFICE DIRECTOR, ICE Detroit Field Office," as a respondent. (Doc. No. 1.) A writ of habeas corpus may only be issued by the person having custody of the detainee. Here, that person is the Field Office Director for the United States Immigration and Customs Enforcement Agency ("ICE"). *Roman v. Ashcroft*, 340 F.3d 314, 320 (6th Cir. 2003). Accordingly, the Court clarifies that the proper Respondent is Kevin Raycraft, Acting Director of the Detroit Field Office. Fed. R. Civ. P. 21 ("Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.").

> Section 1252(e) governs judicial review of orders under § 1225(b)(1). 8 U.S.C. § 1252(e). Section 1225(b)(1) outlines the procedure for expedited removal. The expedited removal procedure requires an immigration officer to order an "applicant for admission"[2] removed from the country without further hearing or review. 8 U.S.C. § 1225(b)(1)(A)(i). An applicant is subject to expedited removal if the applicant (1) is inadmissible because he lacks a valid entry document; (2) has not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility"; and (3) is among those whom the Secretary of DHS has designated for expedited removal. *Id.* §§ 1225(b)(1)(A)(i), (iii)(I)-(II).
>
> Under § 1252(e)(2), judicial review of any determination made under § 1225(b)(1) is limited to determinations of whether (A) the petitioner is an alien; (B) the petitioner was ordered removed under such section; and (C) whether petitioner can show he has been granted entry as lawful permanent resident, refugee, or asylee. *Id.* §§ 1252(e)(2)(A)-(C). Thus, whether the Court has subject-matter jurisdiction over the petition turns on the statutory basis for Petitioner's detention. For the reasons set forth below, I recommend the Court find Petitioner is subject to detention under § 1226(a), not § 1225(b) and thus the Court's review of the petition is not limited by § 1252(e)(2).

*Kumar v. Stevens*, Case No. 3:26-CV-00132-JJH, 2026 WL 1129594, at *4 (N.D. Ohio Apr. 27, 2026), *report and recommendation adopted by* 2026 WL 2184779 (N.D. Ohio July 29, 2026).

As the undersigned recommends the Court find Ba is subject to detention under § 1226(a), not § 1225(b), the undersigned recommends the Court find that its review of Ba's Petition is not limited by § 1252(e)(2).

## B. Merits Review

Ba asserts that his continued detention violates both the Immigration and Nationality Act ("INA") and the United States Constitution, and therefore, "habeas relief is necessary." (Doc. No. 1 at 2.) He argues that his detention is governed by 8 U.S.C. § 1226(a); because he has not been convicted of a crime, Ba maintains he is not subject to mandatory detention under 8 U.S.C. § 1226(c). (*Id.* at 5.) Ba asks that the Court grant the writ and either "order his immediate release to allow him to pursue his BIA appeal, or, in the alternative, order an immediate bond hearing." (*Id.* at 2.)

Respondents argue that Ba "is currently subject to mandatory detention under § 1225(b)(1)(B)(ii) of the [INA], as a post-credible fear applicant for asylum"; therefore, Ba "is not entitled to declaratory relief ordering his release nor to a bond hearing, because his detention is required by statute." (Doc. No. 8 at 1.)

In his Brief in Support of Immediate Release, Ba argues that his "case falls directly within [the] binding precedent" of *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026), where the Sixth Circuit "squarely held that individuals arrested in the interior of the country, long after their entry, are detained under the discretionary framework of § 1226(a), not the mandatory, border-adjacent framework of § 1225(b)." (Doc. No. 10 at 3.) Respondents assert that while "*Lopez-Campos* certainly addresses the scope of individuals covered by § 1225(b)(2)(A), it does not apply to individuals, such as Petitioner, who are detained under § 1225(b)(1)." (Doc. No. 11 at 2.)

The issue before the Court is whether Ba is subject to mandatory detention under § 1225(b)(1) of the INA. Answering the question before the Court turns on the interpretation of §§ 1225 and 1226. "A statute should be construed so that effect is given to all its provisions." *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (citation omitted); *see Corley v. United States*, 556 U.S. 303, 314 (2009); *see also Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (noting that courts "must give effect to the clear meaning of statutes as written") (citation omitted). "When interpreting a statute, the inquiry 'begins with the statutory text, and ends there as well if the text is unambiguous.'" *See In re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022) (citation omitted). But "the meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." *King v. Burwell*, 576 U.S. 473, 486 (2015) (quotation omitted). "[T]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012) (citation omitted). The Court must also "use every tool at [its] disposal to determine the best reading of the statute." *Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 400 (2024). Importantly, the title of the statute and the heading of a section within

the statute are instructive for resolving doubt about the meaning of the statute. *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 780 (E.D. Mich. 2025); *see also Dubin v. United States*, 599 U.S. 110, 120-21 (2023) ("[T]he title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of the statute.") (internal quotations and citations omitted).

Section 1225 applies to "applicants for admission," defined as any "alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). Under § 1225(b)(1), applicants for admission who are inadmissible are removed "without further hearing or review" under an expedited removal process unless the noncitizen "indicates either an intention to apply for asylum...or a fear of persecution" in which case the noncitizen is referred for an asylum interview. *Id.* §§ 1225(b)(1)(A)(i)-(ii). If the asylum officer concludes the noncitizen does not have a credible fear of persecution, "the officer shall order the [noncitizen] removed from the United States without further hearing or review," and the noncitizen must be detained until removed. *Id.* §§ 1225(b)(1)(B)(iii)(I) and (IV). But if the officer finds the noncitizen has a credible fear of persecution, "the [noncitizen] shall be detained for further consideration of the application for asylum" during regular removal proceedings under § 1229a. *Id.* § 1225(b)(1)(B)(ii); 8 C.F.R. 208.30(f). Under § 1225(b)(2)(A), "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under [§ 1229a]."

There is a limited exception to detention under § 1225(b): the Attorney General may "for urgent humanitarian reasons or significant public benefit" temporarily parole noncitizens detained under § 1225(b)(1) and (b)(2). 8 U.S.C. § 1182(d)(5)(A). Parole from custody under § 1182(d)(5)(A) is not considered an "admission" of the noncitizen; such parole "employs a legal fiction whereby noncitizens are physically permitted to enter the country but are nonetheless 'treated' for legal purposes 'as if stopped at the border.'" *Martinez v. Hyde,* 792 F. Supp. 3d 211, 216 (D. Mass. 2025) (citation omitted). A noncitizen

paroled into the country is still treated as an applicant for admission subject to the expedited removal process under § 1225(b)(1). *See* 8 U.S.C. § 1182(d)(5)(A). And when the purpose of parole, in the opinion of the Secretary of Homeland Security, has been served, the noncitizen must return to the custody from which he was paroled. *Id.*

Section 1226 is described as the "default rule" for detaining noncitizens already present in the United States, *Jennings,* 583 U.S. at 288, pending the outcome of the standard removal process under § 1229a, *Dep't of Homeland Sec. v. Thuraissigiam,* 591 U.S. 103, 108 (2020). It provides, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States" and, except as provided in § 1226(c), the Attorney General may detain or release the alien on bond or conditional parole. 8 U.S.C. §§ 1226(a)(2)(A)-(B). The Attorney General may also revoke bond or conditional parole at any time and detain the noncitizen. *Id.* § 1226(b). The pertinent regulations state that an officer may release the noncitizen if the noncitizen demonstrates his release would not pose a danger to property or persons and he is likely to appear for any future proceeding. 8 C.F.R. § 1236.1(c)(8). Noncitizens detained under § 1226 have a right to request a custody redetermination (*i.e.,* a bond hearing) before an immigration judge. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1).

On or about August 5, 2023, Ba entered the United States illegally. (Doc. No. 1 at 3-4; Doc. No. 8-2, PageID# 72.) On August 6, 2023, the Department of Homeland Security ("DHS") determined Ba was inadmissible "pursuant to section 235(b)(1) of the Immigration and Nationality Act (Act), (8 U.S.C. 1225(b)(1))," and placed him in Expedited Removal ("ER") proceedings. (Doc. No. 8-2.) Ba was detained until September 7, 2023, when, as Respondents themselves state, Ba "was re-processed with a Notice to

Appear ('NTA'),[[4]] placed in regular removal proceedings, and released on his own recognizance."[5] (Doc. No. 8 at 3.) Ba applied for asylum in November 2023. (Doc. No. 1 at 4; Doc. No. 1-2, PageID# 21-32.) However, it was not until September 2025 that Ba received a credible fear interview (Doc. No. 8 at 3; Doc. No. 8-1)—some three months after: (1) DHS moved to dismiss Ba's regular removal proceedings over Ba's objection; (2) the immigration judge granted the motion to dismiss; and (3) as Ba no longer had an asylum case pending, DHS arrested and detained Ba after he left the courtroom. (Doc. No. 8 at 3; Doc. No. 8-4, PageID# 79; Doc. No. 8-6, PageID# 92-93.) Ba lived in Cincinnati, Ohio and worked in Burlington, Kentucky from the time he was released on his own recognizance in September 2023 until his arrest outside the courtroom in June 2025.

The District of Massachusetts dealt with a factually analogous case in *De Andrade v. Moniz*, 802 F. Supp. 3d 325 (D. Mass. 2025). In *De Andrade*, the petitioner entered the United States illegally in 2021, and like Ba, he was arrested, detained, and placed into ER proceedings under 1225(b)(1). *Id.* at 328. Like Ba, De Andrade "was then—in apparent violation of that statute, which requires mandatory detention—released on conditional parole under § 1226(a)." *Id.* Like Ba, De Andrade applied for asylum following his release. *Id.* Like Ba, after moving elsewhere in the country, De Andrade was arrested in 2025, when he appeared for a routine check-in with ICE. *Id.*

---

[4] The Court notes that the box stating that "This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture" was left unchecked. *Cf. Pino-Hernandez v. Attorney General*, Case No. 4:26 CV 1783, 2026 WL 3033480, at *1 (N.D. Ohio Oct. 9, 2026) (petitioner released on bond following finding of credible fear of prosecution or torture prior to re-detention); *Kumar v. Stevens*, Case No. 3:26-CV-00132-JJH, 2026 WL 2184779, at *5 (N.D. Ohio July 29, 2026) (adopting Report and Recommendation).

[5] The statutory basis for Ba's release is not clear from either the Petition or Respondents' Return of Writ. In the absence of any other information or argument from Respondents to the contrary, the Court presumes "the phrase 'release on recognizance' [i]s another name for 'conditional parole' under § 1226(a)." *De Andrade v. Moniz*, 802 F. Supp. 3d 325, 332 (D. Mass. 2025).

In *De Andrade*, the government argued that the petitioner was subject to mandatory detention under 1225(b)(1) "because he remains 'an applicant for admission' subject to the 2021 removal order." *Id.* at 331. The District of Massachusetts rejected the government's argument as follows:

> In June 2021, petitioner was conditionally paroled under § 1226(a). He was released under an "Order of Release on Recognizance" "[i]n accordance with section 236 of the Immigration and Nationality Act [8 U.S.C. § 1226] ... provided [he] comply with [specified] conditions." (Order of Release on Recognizance). **As other courts have recognized, "[i]t is apparent that the INS used the phrase 'release on recognizance' as another name for 'conditional parole' under § 1226(a)."** *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007). The government does not dispute that petitioner was conditionally paroled.
>
> Again, § 1225 mandates detention for "applicants for admission" with only limited, individually determined exceptions for parole into the United States. **Petitioner's release under conditional parole was therefore in apparent violation of the statute. The government nevertheless contends that the mandatory detention provision of § 1225 still applies and that, going forward, petitioner may be released, if at all, only pursuant to § 1182(d)(5)(A) parole.** (Respt's' Opp'n at 16 n.2; Respt's' Status Report at 2).
>
> Petitioner contends that his release under § 1226 effected an entry into the United States such that he is no longer an "applicant for admission." (Pet.'s Reply at 9-10). He further contends that his detention under § 1225(b)(1) without a bond hearing therefore deprives him of his right to due process. (*Id.* at 11) (citing *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021)).
>
> The question is thus whether petitioner's conditional parole under § 1226 means that he is "already present" in the United States, not an "applicant for admission," and therefore § 1225 no longer applies to him.
>
> Petitioner's view is clearly correct. By releasing petitioner under conditional parole, the government failed to reserve its right to treat petitioner "in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). **The act of parole extinguished the legal fiction that a non-citizen who is physically present in the United States has, in fact, not effected an entry into the United States. And once having entered, petitioner can no longer be treated as an "applicant for admission" subject to expedited removal and mandatory detention under § 1225. He must be treated like any other unlawfully "present" non-citizen—and the lawfulness of his detention is governed by 8 U.S.C. § 1226.**[7]

> In substance, the government asks the Court to turn a blind eye to the circumstances of petitioner's release and the events of the last four years. It contends that his "release was not an admission to the United States and did not change his status as an applicant for admission subject to expedited removal." (Respt's' Opp'n at 10). But petitioner has been residing in Massachusetts since 2021. **He is not seeking parole *into* the United States. He was already conditionally paroled into the United States. And he is still here. Congress provided a mechanism for paroling applicants for admission into the United States without changing their status. *See* 8 U.S.C. § 1182(d)(5)(A). The government elected not to use that mechanism. It cannot now turn back the clock, and neither can the Court.** *See Zadvydas v. Davis*, 533 U.S. 678, 693, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) ("But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").
>
> **In short, this Court joins the many other courts in this district and across the country that have found that non-citizens who have been conditionally paroled into the United States are entitled to discretionary detention and a bond hearing under §§ 1226(a), not mandatory detention under 1225(b).** *See Rodriguez v. Bostock*, 801 F.Supp.3d 1297, 1303–04 & n.3 (W.D. Wash. Sept. 30, 2025) (collecting cases).[8]
>
> Here, the petitioner does not seek—at least in this petition—the right to stay in the country. He instead seeks release pending further immigration proceedings. And while he may "remain subject to arrest, detention, and removal" under §§ 1226(a) and 1229a(e)(2), he is not subject to detention under § 1225(b)(1).

*Id.* at 331-33 (emphasis added).

This Court also recently rejected the application of mandatory detention under 1225(b)(1) in "factually adjacent" circumstances. *Pino-Hernandez v. Attorney General*, Case No. 4:26 CV 1783, 2026 WL 3033480 (N.D. Ohio Oct. 9, 2026) (petitioner released on bond following finding of credible fear of prosecution or torture prior to re-detention); *Kumar*, 2026 WL 1129594 (same). *Cf. Garcia Gonzalez v. Raycraft*, Case No. 4:26-CV-00703, 2026 WL 1785221 (N.D. Ohio June 22, 2026) (holding detention mandatory under § 1225(b)(1)(B)(ii)).[6]

---

[6] As the Court noted in *Pino-Hernandez*, in *Garcia Gonzalez* "the petitioner did not apply for asylum until he was detained by ICE and the court did not explicitly address the impact of the petitioner's earlier release on parole." 2026 WL 3033480, at *2 n.5.

The undersigned finds the reasoning of the *De Andrade* court to be persuasive in the instant case. It is true that the government here argues not that Ba remans an "applicant for admission" under 1225(b)(1), but rather that he is subject to mandatory detention under 1225(b)(1) as a "post-credible fear asylum applicant." (Doc. No. 8.) However, the undersigned finds that such a distinction does not alter the force of the *De Andrade* court's reasoning under the facts of this case. The Court cannot "turn a blind eye to the circumstances of [Ba's] release and the events of the last [three] years." *De Andrade*, 802 F. Supp. 3d at 332. The Court finds that Ba, having been released on his own recognizance and re-detained almost two years later, is not subject to mandatory detention under § 1225(b). *See Kumar*, 2026 WL 1129594, at *10. The Court notes that Respondents fail to identify any other statutory authority for Ba's detention.

"Because this Court finds that Petitioner's detention is not valid under Section 1225(b)(1), this Court need not address whether his detention violates Due Process." *Pino-Hernandez*, 2026 WL 3033480, at *3 n.6.

**V. Conclusion**

For all the reasons set forth above, it is recommended that the Court find that Ba's detention is unlawful, GRANT the Petition, and RELEASE Ba from pre-removal detention.

Date: November 2, 2026

*s/ Jonathan Greenberg*
Jonathan D. Greenberg
United States Magistrate Judge

**OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**